# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**ROBERT PURVIS**                                                        **PLAINTIFF**

**V.**                        **NO. 3:22-CV-00224-JTK**

**COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**           **DEFENDANT**

## ORDER

**I.  Introduction:**

Plaintiff, Robert Purvis ("Purvis"), applied for Supplemental Security Income Benefits and Disability Insurance Benefits on September 19, 2017, alleging a disability onset date of September 15, 2017. (Tr. at 271-276, 277-282). After conducting a hearing, an Administrative Law Judge (ALJ) denied Purvis's applications on July 19, 2019. (Tr. at 7-25). The Appeals Council denied his request for review. (Tr. at 1-6).

Purvis sought judicial review in this Court. On May 21, 2020, the Court remanded the clai for further proceedings. (Tr. at 1059-1065).

While Purvis's claim was pending in this Court, he filed subsequent applications for disability benefits. (Tr. at 1172-1186). The Appeals Council consolidated the applications and remanded the claims for further consideration, pursuant to the Court's order. (Tr. at 1066-1068).

After a second hearing was held, an ALJ denied the claim again on August 9,

2021. (Tr. at 878-905). Although Purvis submitted written exceptions to the ALJ's decision, the Appeals Council declined to review the decision. (Tr. at 871-877). The ALJ's 2021 decision now stands as the final decision of the Commissioner, and Purvis has requested judicial review.

For the reasons stated below, the Court [1] affirms the decision of the Commissioner.

## II. The Commissioner's Decision:

Purvis is a 31 year-old man with a high school education and past relevant work as a cleaner and factory worker. He met the insured statues requirements of the Social Security Act through September 20, 2021. (T. at 884). The ALJ found that Purvis had not engaged in substantial gainful activity since the alleged onset date of September 15, 2017.[2] *Id*. The ALJ found, at Step Two, that Purvis had the following severe impairments: lumbar and thoracic degenerative disc disease and chronic pain syndrome. *Id*.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

Purvis worked during the relevant time-period, including working 12-hour shifts up until 2021, but limited earnings meant that the work did not rise to the level of substantial gainful activity. *Id*.

After finding that Purvis's impairments did not meet or equal a listed impairment, the ALJ determined that Purvis had the residual functional capacity ("RFC") to perform work at the light exertional level, with an additional limitation: he can no more than occasionally climb, balance, stoop, kneel, crouch and/or crawl. *Id*.

At Step Four, the ALJ determined that Purvis is unable to perform any of his past relevant work. (Tr. at 892). Relying upon testimony from a Vocational Expert ("VE"), the ALJ found, based on Purvis's age, education, work experience and RFC, that she could perform work in the national economy. (Tr. at 893-894). Therefore, the ALJ concluded that Purvis was not disabled. *Id*.

### III. <u>Discussion</u>:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the

existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B. Purvis's Arguments on Appeal

Purvis contends that the evidence supporting the ALJ's decision is less than substantial. He argues that: (1) the ALJ improperly discounted the opinion of Purvis's treating physician; and (2) the ALJ erred in his evaluation of Purvis's subjective complaints.

While Purvis had lumbar and thoracic injuries that caused pain, a few things undermine his allegation that he is disabled. (Tr. at 493, 503, 1292). First, treatment

4

was generally conservative, consisting of medication management; moreover, treatment provided some improvement.[3] (Tr. at 490-556, 889-894). Second, Purvis declined doctors' recommendations for more aggressive treatment. (Tr. at 599-600, 617, 653, 1342). Third, Purvis was not always compliant with treatment.[4] (Tr. at 490, 556). Fourth, clinic examinations were grossly normal. (Tr. at 2205). Fifth, Purvis could perform some daily activities, albeit, at a slower pace.[5] (Tr. at 889, 937, 941, 1029-1046, 1238-1245). Finally, and most importantly, Purvis admitted that he worked a job with long hours during the relevant time-period, which job required light exertional level activities, at a minimum.[6] (Tr. at 937-941).

Dr. Drew Dawson, M.D., treated Purvis for pain throughout the relevant time-period. He issued a medical source statement in February 2018, three years before the end of the relevant time-period. (Tr. at 740-741, 1365-1366). In the opinion, he concluded that Purvis could not perform even sedentary exertional work. *Id*. Dr.

---

[3] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[4] A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of his alleged disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).

[5] Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[6] Working generally demonstrates an ability to perform a substantial gainful activity, and it is inconsistent with complaints of disabling conditions. *Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir. 1994).

Dawson wrote that Purvis would need longer than normal breaks and would miss more than three says of work per month. *Id*.

The ALJ reviewed the opinion and found that it only had limited persuasiveness.[7] (Tr. at 890). The ALJ gave good reasons for discounting Dr. Dawson's opinion. (Tr. at 890-891). He found that the opinion was inconsistent with Dr. Dawson's own treatment notes. *Id.* Those notes showed improvement with treatment, normal gait and station, and no decreased range of motion. (Tr. at 835-867). The record also shows that Purvis was able to work a job with 12-hour shifts, could lift a 20-pound bag of dog food, and could split wood. (Tr. at 889, 937-941, 1029-1035, 1237-1245). Throughout the ALJ's decision, he pointed to other

---

[7] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 U.S. Dist. LEXIS 110370 at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

ALJs are required to explain their decisions as to the two most important factors: supportability and consistency. 20 C.F.R. 404.1520(b)(2). These requirements are meant to provide individuals with a better understanding of the Commissioner's decision and provide sufficient rationale for a reviewing adjudicator or court. *Phillips, supra*; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at 5854, 5858 (January 18, 2017).

evidence that confirmed the limited persuasiveness of the opinion.[8]

Additionally, the ALJ discussed the multiple RFC opinions from Disability Determination Services medical specialists. (Tr. at 888-890). Those specialists suggested that Purvis could perform light work with postural limitations. *Id*. The ALJ found these opinions to be generally consistent with the balance of the medical evidence, and he limited Purvis to light exertional work with only occasionally climbing balancing, stooping, kneeling, crouching, and crawling. *Id.* The ALJ's treatment of Dr. Dawson's opinion was supported by substantial evidence in the record as a whole. *See Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021); *Jarmon v. Kijakazi*, 2023 U.S. App. LEXIS 5368 (8th Cir. March 7, 2023).

Next, Purvis asserts that the ALJ failed to adequately consider and discuss Purvis's subjective complaints.[9]

As set forth above, the ALJ discussed the objective evidence, which showed

---

[8] Also, Dr. Dawson's opinion was on a short checkbox form, with little elaboration. Such opinions may properly be discounted, if they are conclusory or unsupported by relevant medical evidence. *See Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018).

[9] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* (internal citations omitted).

lumbar and thoracic injuries. But the ALJ also discussed clinical examinations showing mild-to-moderate conditions, which did not support Purvis's claim that he could not work at all. (Tr. at 885-890). Additionally, Purvis admitted to working a job where he was on his feet most of the day, working 12-hour shifts. *Id*. He said he would only become sufficiently uncomfortable after six or seven hours. *Id*. The job required occasional lifting of up to 50 pounds. *Id.*

The ALJ also discussed side effects from medication and Purvis's improvement in pain as a result of treatment. *Id*. And he addressed Dr. Dawson's claim that Purvis could not work owing to two failed work attempts. *Id*. This claim is directly contradictory to Purvis's ability to retain a job working 12-hour shifts. Finally, the ALJ considered Purvis's daily activities: he could cook with friends, drive long distances, go to Wal-Mart, and do light chores. *Id*., (Tr. at 1237-1245). He did not use an assistive device for ambulation. (Tr. at 886). The ALJ properly evaluated Purvis's complaints of pain and found them to be inconsistent with the record.

**IV.   Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated the medical opinions and Purvis's subjective complaints. The finding that Purvis was not disabled within the meaning of the

Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

    IT IS SO ORDERED this 18th day of September, 2023.

_____
UNITED STATES MAGISTRATE JUDGE